No. 02-567

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 144

THE STANLEY L. AND CAROLYN M.
WATKINS TRUST; STEVEN B. WILLIAMSON,
individually and as Personal Representative of THE
ESTATE OF STANLEY L. WATKINS, Deceased,

        Plaintiffs and Appellants,

    v.

SUSAN M. LACOSTA, ESQ., and HEDMAN,
HILEMAN & LACOSTA, Attorneys at Law,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead, Cause No. DV 2000-401(A)
                The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Kenneth R. Dyrud, Church, Harris, Johnson & Williams, P.C., Missoula,
                Montana

        For Respondents:

                George D. Goodrich, William Evan Jones, Garlington, Lohn & Robinson,
                PLLP, Missoula, Montana

Submitted on Briefs:  January 16, 2003

Decided:  June 8, 2004

Filed:

_____
                       Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      The Stanley L. and Carolyn M. Watkins Trust, and Steven B. Williamson, individually and as Personal Representative of the Estate of Stanley L. Watkins, deceased (collectively, "Appellants"), brought a legal malpractice action in the District Court for the Eleventh Judicial District, Flathead County, to recover damages allegedly sustained as a result of attorney Susan Lacosta's negligence in drafting the Trust documents and Stanley's will.  The District Court granted Respondent's motion for summary judgment concluding that Appellant's action was time-barred under the three-year statute of limitations for legal malpractice actions and that the doctrines of *res judicata*, equitable estoppel and judicial estoppel barred Appellants' claim.  We reverse and remand for further proceedings consistent with this Opinion.

¶2      We address the following issues on appeal:

¶3      1.   Whether Appellants have standing to bring a legal malpractice action against Respondents.

¶4      2.   Whether the doctrines of *res judicata*, collateral estoppel, equitable estoppel and judicial estoppel bar Appellants' claims against Respondents.

¶5      3.   Whether Appellants' claims against Respondents are barred by the three-year statute of limitations for legal malpractice.

**Factual and Procedural Background**

¶6     Steve Williamson and his stepfather, Stanley Watkins, each owned interests in a trucking operation they had built together. In late 1991 or early 1992, Stanley's wife, Carolyn, retained Susan Lacosta, an attorney whose emphasis was in estate and tax planning, to draft an estate plan for Stanley and Carolyn along with partnership and shareholder agreements related to the trucking operation. At Stanley's and Carolyn's request, Lacosta included in the Trust agreement a direct bequest of Stanley's interest in the trucking operation to Steve upon the death of the survivor of Stanley and Carolyn.

¶7     In January 1992, Stanley and Carolyn signed their wills and a Trust agreement entitled "The Stanley L. and Carolyn M. Watkins Revocable Trust Agreement" (the Trust). At the same time, they each signed an assignment of virtually all of their property to the Trust, over which they both were Trustees. Stanley suffered from a heart condition and he was legally blind. Because of Stanley's ill health, Lacosta never met with him, nor did she discuss the estate plan with him. Instead, Lacosta sent the wills and Trust documents home with Carolyn and, contrary to the attestations appearing in the wills, they were signed outside of the presence of the purported witnesses (including Lacosta) and outside of the presence of a notary public.

¶8     Stanley died on April 7, 1992, and his will, prepared only a few months earlier, was admitted to probate. Although Stanley's 1992 will was admitted to probate with Lacosta's knowledge, Lacosta did not disclose to Carolyn or to the court that the will had been improperly executed because it was not signed in the presence of witnesses as required by

3

§ 72-2-522, MCA. Lacosta also did not disclose to Carolyn that when Stanley died, the Trust became irrevocable.

¶9 Upon Stanley's death, Carolyn became the sole Trustee under the Trust. For the next three years, Carolyn, as Trustee, facilitated the administration of the Trust and Stanley's estate.

¶10 In early January 1995, Steve met with John Hagman, an insurance agent, to discuss Steve's own life insurance and estate planning needs. They reviewed the Trust agreement, but because neither of them were able to decipher what the Trust agreement meant or accomplished, they met with Lacosta on January 13, 1995, to clarify the disposition of the trucking operation stock through the Trust. Lacosta told them that the Trust was revocable and that Carolyn could do whatever she wanted with the assets. However, a few months later, Lacosta informed Carolyn that the Trust was a Qualified Terminable Interest Property (QTIP) trust and that Carolyn could not revoke the provisions of the Trust that left Stanley's interest in the trucking operation to Steve.

¶11 In August 1995, Carolyn, Lacosta, Steve and the other Watkins' children attended a meeting for the specific purpose of discussing the Trust and other related financial matters. At the meeting, Lacosta summarized the Trust, but at no time did she or anyone else give any indication that there were questions about the validity of the Trust or Stanley's will.

¶12 Sometime prior to this meeting, Carolyn had contacted Neil McKay, an estate and tax planning attorney, to inquire about the Trust. McKay testified in his deposition that the Trust would be very difficult for the average layperson to understand. In fact, he testified that

4

even as an estate and tax planning expert, he had to spend many hours reading the Trust agreement before he could understand it.

¶13    In December 1995, McKay wrote to Steve and the other Trust beneficiaries on Carolyn's behalf, disclosing that there were defects in the estate plan.  He sought their agreement to declare void an attempted transfer to the Trust.  Thereafter, Carolyn attempted to invalidate Stanley's 1992 will and the Trust.  This resulted in acrimonious and protracted litigation between Carolyn and the Trust beneficiaries.  In those cases (hereafter collectively referred to as the "Beneficiary Suits"), the District Court found Carolyn's claims to be time barred.

¶14    Carolyn died on February 23, 1997.  On April 3, 1997, Appellants brought this legal malpractice action to recover damages allegedly caused by Lacosta.  Appellants alleged that Lacosta committed malpractice in connection with the estate plan enabling an attack on the Trust and Stanley's will thereby damaging each of them.  Because Lacosta's alleged malpractice created conflicting expectations among the survivors, the Estate of Carolyn M. Watkins brought a separate malpractice action wherein Carolyn's estate asserted that in addition to the problems regarding the witnessing of Stanley's will, Lacosta failed to draft the Trust according to Stanley's and Carolyn's wishes.  *Estate of Carolyn Watkins v. Hedman, Hileman & Lacosta*, 2004 MT 143, ___ Mont. ___, ___ P.3d ___.

¶15    In the instant case, Respondents moved for summary judgment.  The District Court granted Respondents' motion concluding that the statute of limitations on Lacosta's alleged malpractice began to run by the time Stanley's will was admitted to probate in April 1992,

5

and that this action is therefore untimely. The court further held that Appellants did not have standing because they were not clients of Lacosta and that the action was barred by *res judicata*, equitable estoppel and judicial estoppel. Thereafter, Appellants filed a Motion for Relief from Judgment that was not ruled upon. Appellants also filed a Motion to Alter or Amend that was denied. From this judgment and these orders, Appellants appeal.

**Standard of Review**

¶16 Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Our standard in reviewing a district court's summary judgment ruling is *de novo*. *Johnson v. Barrett*, 1999 MT 176, ¶ 9, 295 Mont. 254, ¶ 9, 983 P.2d 925, ¶ 9 (citing *Stutzman v. Safeco Ins. Co. of America* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34). We use the same Rule 56, M.R.Civ.P., criteria applied by the district court. *Johnson*, ¶ 9. Moreover, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. *Johnson*, ¶ 8 (citing *Schmidt v. Washington Contractors Group*, 1998 MT 194, ¶ 7, 290 Mont. 276, ¶ 7, 964 P.2d 34, ¶ 7).

**Issue 1.**

¶17 *Whether Appellants have standing to bring a legal malpractice action against Respondents.*

¶18 Appellants contend that the District Court's orders should be reversed and remanded because the court's rationale on this issue is unclear. In their motion for summary judgment, Respondents did not raise any issues as to Appellants' standing to bring this action. Rather,

the standing issue was raised by the District Court at the close of the hearing on the motion for summary judgment, based on an inquiry to Respondents' counsel regarding the existence of a fiduciary relationship between Lacosta and Appellants.

¶19     With regard to the Estate of Stanley L. Watkins (the Estate), Lacosta admits that Stanley was a client.  Because the Estate stands in the shoes of the decedent, it is considered to be in privity with the attorney, and the personal representative has standing to prosecute a malpractice claim. *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner* (Fla. 1993), 612 So.2d 1378, 1380.

¶20     A fact issue exists as to whether the Trust is a client or a nonclient beneficiary.  The Trust may be considered a client based upon the legal services provided by Lacosta to the Trust and its Trustees, services which involved Trust assets and transactions.  Because Lacosta did not raise the issue of standing in her motion for summary judgment, she presented no facts as to whether the Trust was or was not a client.  And, in its order, the District Court failed to cite to any cases and made no conclusions as to whether a duty exists to nonclients, or the extent of that duty if it does exist.  However,

> [t]he courts agree that the existence of the attorney-client relationship, the contractual scope of duty, the causation of damages and the extent of damages usually are issues for the trier of fact . . . .  A common factual dispute is whether there was an attorney-client relationship.

Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice*, Vol. 5, § 33.11 (5th ed. 2000) (hereafter, *Mallen*).

7

¶21 Steve claims standing as a nonclient beneficiary of the estate plan. The duty owed to a nonclient beneficiary is a matter of first impression in Montana. *See Rhode v. Adams*, 1998 MT 73, ¶¶ 12-13, 288 Mont. 278, ¶¶ 12-13, 957 P.2d 1124, ¶¶ 12-13. However, the majority rule in other jurisdictions supports standing in cases involving actions by named beneficiaries against drafting attorneys. *Cf., Blair v. Ing* (Haw. 2001), 21 P.3d 452; *Mallen*, Vol. 4, § 32.4 ("Despite statements that strict privity is the prevailing or majority rule, just the opposite is true of actions brought by beneficiaries of wills. A duty to a third party is implied because that is the mutual intent of the attorney and client.")

¶22 Moreover, a finding of duty is consistent with existing Montana law. This Court has noted that a multi-factor balancing test adopted in other jurisdictions may be appropriate in deciding the duty owed by attorneys to nonclients in estate planning. *Rhode*, ¶ 17. Additionally, we have recognized liability to nonclients in other professional contexts. *See, e.g., Thayer v. Hicks* (1990), 243 Mont. 138, 793 P.2d 784 (accounting firm liable to nonclient); *Jim's Excavating Serv. v. HKM Assoc.* (1994), 265 Mont. 494, 878 P.2d 248 (professional engineer liable to nonclient); *Turner v. Kerin & Assoc.* (1997), 283 Mont. 117, 938 P.2d 1368 (professional engineer liable to nonclient).

¶23 Accordingly, we hold that the Estate does have standing to bring a legal malpractice action against Respondents. We further hold that whether the Trust and Steve have standing to bring a legal malpractice action against Respondents is a factual issue that must be determined at trial, thus precluding summary judgment.

**Issue 2.**

8

¶24 *Whether the doctrines of res judicata, collateral estoppel, equitable estoppel and judicial estoppel bar Appellants' claims against Respondents.*

¶25 Appellants contend that the District Court erred in concluding that the doctrines of *res judicata*, equitable estoppel and judicial estoppel barred Appellants' claims. Instead, Appellants argue that when an attorney's estate planning causes loss or injury to estate and trust assets and requires clients and beneficiaries to resort to litigation as the only means of resolving the disposition of assets, a subsequent malpractice action is not barred under the doctrines of *res judicata*, equitable estoppel or judicial estoppel as the elements necessary to establish those defenses are absent.

¶26 The doctrines of *res judicata* and collateral estoppel are based on a judicial policy favoring a definite end to litigation. *Kullick v. Skyline Homeowners Ass'n*, 2003 MT 137, ¶ 17, 316 Mont. 146, ¶ 17, 69 P.3d 225, ¶ 17 (citing *Rausch v. Hogan*, 2001 MT 123, ¶ 14, 305 Mont. 382, ¶ 14, 28 P.3d 460, ¶ 14). *Res judicata* bars a party from relitigating a matter that the party has already had an opportunity to litigate. *Kullick*, ¶ 17 (citing *Olson v. Daughenbaugh*, 2001 MT 284, ¶ 22, 307 Mont. 371, ¶ 22, 38 P.3d 154, ¶ 22). Collateral estoppel is a form of *res judicata* and bars the reopening of an issue that has been litigated and resolved in a prior suit. *Kullick*, ¶ 18 (citing *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 28, 301 Mont. 240, ¶ 28, 8 P.3d 778, ¶ 28).

¶27 The doctrine of *res judicata* applies if the following four elements have been satisfied: (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; and

9

(4) the capacities of the persons are the same in reference to the subject matter and to the issues between them. *Kullick*, ¶ 17 (citing *Hall v. Heckerman*, 2000 MT 300, ¶ 13, 302 Mont. 345, ¶ 13, 15 P.3d 869, ¶ 13). Here, the Beneficiary Suits were not malpractice actions and it is undisputed that Respondents were not parties to that litigation. Thus, *res judicata* is not applicable in this case.

¶28 The same is true as to the doctrine of collateral estoppel. Collateral estoppel only applies if the following three elements have been satisfied: (1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; and (3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication. *Kullick*, ¶ 18. As Appellants point out in their brief on appeal, this Court has recognized that parties who are drawn into litigation as a result of a professional's malpractice have a right to bring a subsequent and separate suit against the professional. *See Fadness v. Cody* (1997), 287 Mont. 89, 951 P.2d 584 (sellers who were awarded damages against purchasers as a result of fraud in real estate action have a subsequent and separate action against real estate agent and closing agent for their breaches of duty). The reason behind allowing a subsequent and separate action is that the later action raises different issues.

> Identity of issues is the most crucial element of collateral estoppel. In order to satisfy this element, the identical issue or "precise question" must have been litigated in the prior action.
> . . . .
> . . . The fact that each action arises from the same transaction does not mean that each involve the same issues.

10

*Fadness*, 287 Mont. at 96-97, 951 P.2d at 588-89 (citations omitted).  We noted in *Fadness* that "[t]he duties owed by [the professionals] to the [plaintiff] were not decided, nor even considered by the jury in the first case."  *Fadness*, 287 Mont. at 97, 951 P.2d at 589.  Similarly, in the case *sub judice*, the duties owed by Respondents were not considered or decided in the prior Beneficiary Suits.  *See In the Matter of Stanley L. and Carolyn M. Watkins Revocable Trust Agreement* (Toole County Cause No. DV 96-016); *In the Matter of the Estate of Stanley L. Watkins* (Toole County Cause No. 92-DP-020).

¶29    Nor is equitable estoppel applicable in this case.  Equitable estoppel is based upon the principle that "a party cannot, through his intentional 'conduct, actions, language, or silence,' induce another party to unknowingly and detrimentally alter his position and then subsequently deny the just and legal consequences of his intentional acts."  *Kelly v. Wallace*, 1998 MT 307, ¶ 43, 292 Mont. 129, ¶ 43, 972 P.2d 1117, ¶ 43.

¶30    The following elements must be proved by clear and convincing evidence to show equitable estoppel:  (1) there must be conduct, acts, language, or silence amounting to a representation or a concealment of a material fact; (2) the facts must be known to the party to be estopped at the time of that party's conduct, or at least the circumstances must be such that knowledge of the facts is necessarily imputed to that party; (3) the truth must be unknown to the other party at the time the representation was acted upon; (4) the representation must be made with the intent or the expectation that it will be acted on by the other party; (5) the representation must be relied upon by the other party, leading that party to act upon it; and (6) the other party must in fact rely on the representation so as to change

11

its position for the worse. *City of Whitefish v. Troy Town Pump*, 2001 MT 58, ¶ 15, 304 Mont. 346, ¶ 15, 21 P.3d 1026, ¶ 15 (citing *Billings Post No. 1634 v. Dept. of Revenue* (1997), 284 Mont. 84, 90, 943 P.2d 517, 520).

¶31 In the instant case, Steve's attorneys wrote to Respondents in October 1996, to put them on notice that they would be held liable for damages caused by Lacosta's faulty work and to advise them to notify their malpractice carrier. The District Court erroneously concluded that equitable estoppel was created by representations in the letter that Carolyn's claims were "without merit and barred by various statutes and general legal principals." However, we have previously held that equitable estoppel is inapplicable when the conduct complained of consists solely of legal representations. *City of Whitefish*, ¶ 17 (citing *Elk Park Ranch v. Park County* (1997), 282 Mont. 154, 935 P.2d 1131).

¶32 Moreover, the party asserting equitable estoppel has the affirmative duty of proving its elements. *Kelly*, ¶ 43 (citations omitted). Here, Respondents have not submitted any evidence to establish that they relied on the letter or that they changed their position for the worse because of the letter. Thus, equitable estoppel is not applicable in this case.

¶33 Likewise, judicial estoppel has no application in this case. The doctrine of judicial estoppel binds a party to their judicial declarations and precludes a party from taking a position inconsistent with previously made declarations in a subsequent action or proceeding. *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 15, 307 Mont. 45, ¶ 15, 36 P.3d 408, ¶ 15 (citing *Fiedler v. Fiedler* (1994), 266 Mont. 133, 139, 879 P.2d 675, 679). A party claiming that judicial estoppel bars another party from re-litigating an issue must show: (1) the

12

estopped party had knowledge of the facts at the time he or she took the original position; (2) the estopped party succeeded in maintaining the original position; (3) the position presently taken is inconsistent with the original position; and (4) the original position misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party. *Kaufman*, ¶ 16 (citing *In re Raymond W. George Trust*, 1999 MT 223, ¶ 51, 296 Mont. 56, ¶ 51, 986 P.2d 427, ¶ 51).

¶34     Here, the record is devoid of any evidence that Respondents were misled and the District Court did not make any findings or conclusions that Respondents were misled. Furthermore,

> [a] judicial admission is not binding unless it is an unequivocal statement of fact. Hence, "[f]or a judicial admission to be binding upon a party, the admission must be one of fact rather than a conclusion of law or the expression of an opinion."

*George Trust*, ¶ 37 (quoting *DeMars v. Carlstrom* (1997), 285 Mont. 334, 337-38, 948 P.2d 246, 248-49). Thus, a judicial admission applies to facts, not to legal theories or positions. The District Court determined in the instant case that Appellants took the position that the provisions of the Trust and Stanley's will were correctly and properly drafted and that Steve prevailed in the Beneficiary Suits. However, in that event, it would have been a legal position and not an unequivocal statement of fact.

¶35     Accordingly, we hold that the District Court erred in concluding that the doctrines of *res judicata*, collateral estoppel, equitable estoppel and judicial estoppel barred Appellants' claims against Respondents.

**Issue 3**

¶36    *Whether Appellants' claims against Respondents are barred by the three-year statute of limitations for legal malpractice.*

¶37    Appellants argue that the statute of limitations for technical defects in complex estate planning documents does not begin to run until laypersons discover or should have discovered the malpractice, a fact issue precluding summary judgment.  Appellants further argue that concealment by the attorney also tolls the statute.  Additionally, Appellants argue that the statute does not begin to run until damages are suffered and that they could not have sued before 1995, because until that time the estate plan was operating properly and to their benefit, thus they would have had no damages to sue upon.

¶38 The statute of limitations for a legal malpractice action provides:

> An action against an attorney licensed to practice law in Montana or a paralegal assistant or a legal intern employed by an attorney based upon the person's alleged professional negligent act or for error or omission in the person's practice must be commenced within 3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the act, error, or omission, whichever occurs last, but in no case may the action be commenced after 10 years from the date of the act, error, or omission.

Section 27-2-206, MCA.

¶39 The first issue to address when determining whether a party is barred by the statute of limitations is when the statute begins to run. In the context of legal malpractice actions, we have held that both the "discovery rule" and the "accrual rule" are statutorily binding. *Johnson*, ¶¶ 11-20 (confirming statutory adoption of "discovery rule"); *Uhler v. Doak* (1994), 268 Mont. 191, 195-200, 885 P.2d 1297, 1300-03 (confirming statutory adoption of "accrual rule").

¶40 The "discovery rule" begins the statute of limitations upon the discovery of the negligent act. Section 27-2-206, MCA; *Johnson*, ¶¶ 11-20. The "accrual rule" provides that the statute of limitations begins when all elements of a claim, including damages, have occurred. *Uhler*, 268 Mont. at 195-200, 885 P.2d at 1300-03 (adopting "accrual rule" pursuant to §§ 27-2-102(1)(a) and (2), MCA). Thus, the law in Montana for legal malpractice actions is that the statute of limitations does not begin to run until both the "discovery rule" and the "accrual rule" have been satisfied. Hence, the statute of limitations in a legal malpractice action does not begin to run until the negligent act was, or should have

been, discovered, *and* all elements of the legal malpractice claim, including damages, have occurred.

*Discovery Rule*

¶41 Appellants' failure to discover Lacosta's purported negligence may be excused because of the complexity of the legal transaction involved. In *Young v. Datsopoulos* (1991), 249 Mont. 466, 817 P.2d 225, we held that if a legal transaction is beyond the understanding of a layperson and the "date of discovery" is disputed, summary judgment is not appropriate. In *Young*, the decedent's family hired defendants to probate decedent's estate. The family claimed that defendants committed legal malpractice by misadvising the family concerning removal of a co-personal representative; the possible defense of lack of consideration to a claim against the estate on several promissory notes; and abandonment of several potential lawsuits. *Young*, 249 Mont. at 469, 817 P.2d at 227. We reversed the trial court's grant of summary judgment reasoning that the legal transactions constituting the alleged malpractice were beyond the understanding of a layperson, therefore, when the facts should have been knowable was a question of fact precluding summary judgment. *Young*, 249 Mont. at 473, 817 P.2d at 229.

¶42 Furthermore, a drafting attorney may not impose upon her client a duty to understand defects in a technical instrument in order to defeat a malpractice claim. In *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (Cal. 1971), 491 P.2d 421, 428, the California Supreme Court judicially adopted a "discovery" rule for statutes of limitation in legal malpractice cases stating:

16

Corollary to [the attorney's] expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it. He cannot be expected to know the relative medical merits of alternative anesthetics, nor the various legal exceptions to the hearsay rule. If he must ascertain malpractice at the moment of its incidence, the client must hire a second professional to observe the work of the first, an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client.

. . . In the legal field, the injury may lie concealed within the obtuse terminology of a will or contract; . . .

¶43 Here, the estate plan created by Lacosta created wills with pour-over provisions and several trusts. The complexity of this estate plan made it difficult even for experts to understand. John Hagman, an insurance and financial advisor with substantial experience in estate planning, could not determine whether the Trust was an irrevocable QTIP trust. Although attorney Neil McKay was ultimately able to comprehend the estate plan, he testified in his deposition that he spent numerous hours attempting to unravel and understand the plan. Given the inability of these professionals to understand the estate plan, we conclude that it was clearly beyond Appellants' understanding. Furthermore, Lacosta presented no facts to show that either Steve, the Trust or the Estate discovered, or through the use of reasonable diligence should have discovered, the defects in the Trust documents in 1992 when Stanley's will was probated.

¶44 In addition, whether a plaintiff discovers, or through the use of reasonable diligence should have discovered, the act, error, or omission depends not only on the complexity of the defect, but also on whether the defect is concealed. To that end, this Court has held that

[t]he three-year statute of limitations for legal malpractice actions contains a built-in tolling mechanism for a defendant's fraudulent concealment of a

17

> plaintiff's injury. That is, a statute of limitations does not begin to run until the plaintiff discovers, or with reasonable diligence should have discovered, the act, error, or omission.

*Joyce v. Garnaas*, 1999 MT 170, ¶ 15, 295 Mont. 198, ¶ 15, 983 P.2d 369, ¶ 15. Thus, in the context of legal malpractice, a nexus exists between a defendant's fraudulent concealment and the question of whether a plaintiff should have discovered the defendant's negligent act.

¶45 Although we have not yet ruled upon this issue, other courts have held that "mere failure to reveal information can be fraudulent concealment by a person, such as a fiduciary, who has a duty to disclose." *Geo. Knight & Co. v. Watson Wyatt & Co.* (1ˢᵗ Cir. 1999), 170 F.3d 210, 215 (citation omitted). Thus, "if a trust or confidential relationship exists between the parties, which imposes a duty to disclose, mere silence, by the one under that duty constitutes fraudulent concealment and thus tolls the applicable statute of limitations." *Greene v. Morgan, Theeler, Cogley & Petersen* (S.D. 1998), 575 N.W.2d 457, 462 (citation omitted).

¶46 This rule recognizes that a client's failure to discover an attorney's malpractice often results from "a second breach of duty by the fiduciary, namely, a failure to disclose material facts to his client." *Neel,* 491 P.2d at 429. As the California Supreme Court noted in *Neel*, tolling the statute of limitations when the attorney remains silent "vindicates the fiduciary duty of full disclosure; it prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure." *Neel*, 491 P.2d at 429.

18

¶47     In the instant case, the technical nature of the alleged defects, Lacosta's actions as a fiduciary and as an officer of the court in allegedly concealing the false attestations on Stanley's will when submitted to probate, her allegedly contradictory advice about the operation of the Trust, and her alleged treatment of the Trust and Stanley's will as valid and operative, are exactly the type of factual questions appropriate for resolution by a trier of fact. *See Young*, 249 Mont. at 473, 817 P.2d at 229.

*Accrual Rule*

¶48     Section 27-2-102, MCA, provides in pertinent part:

> **When action commenced.** (1) For the purposes of statutes relating to the time within which an action must be commenced:
> (a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action;
> . . . .
> (2) Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues. Lack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.

¶49     We have held that this "accrual rule" applies to legal malpractice actions and that the statute of limitations does not begin to run until all elements of a claim, including damages, have occurred. *Uhler*, 268 Mont. at 195-200, 885 P.2d at 1300-03. More specifically, we stated that

> [i]n order to establish a cause of action for legal malpractice, there must be a showing that the attorney owed his client a duty of care, that there was a breach of this duty by a failure to use reasonable care and skill, *and that the breach was the proximate cause of the client's injury and resulted in damages.*

19

*Uhler*, 268 Mont. at 196, 885 P.2d at 1300 (citing *Merzlak v. Purcell* (1992), 252 Mont. 527, 529, 830 P.2d 1278, 1279-80) (emphasis added). In *Uhler*, we overruled our prior decision in *Boles v. Simonton* (1990), 242 Mont. 394, 791 P.2d 755, wherein we determined that the statute of limitations precluded plaintiff's claims against their attorney even before they had sustained any actual damages as a result of the malpractice. *Uhler*, 268 Mont. at 199, 885 P.2d at 1302. We further stated in *Uhler* that it is inherently illogical and unfair to require a plaintiff to file an action prior to the accrual of the cause of action because if a plaintiff filed suit when no actual damages had been sustained, the suit would properly be dismissed. *Uhler*, 268 Mont. at 198, 885 P.2d at 1302. Moreover, the mere threat of future harm does not constitute actual damages. *Uhler*, 268 Mont. at 198-99, 885 P.2d at 1301-02.

¶50    In the instant case, Respondents contend that the latest that the statute of limitations could have started to run is April 1992, when Stanley's will was admitted to probate and when Carolyn acted to her later alleged detriment. However, this fails to explain how Carolyn's reliance on the will by treating it as valid and seeking its probate damaged Appellants in any fashion. On the contrary, Steve, the Estate and the Trust could not have filed suit against Respondents in 1992 complaining that the Trust agreement and Stanley's will were operating as valid testamentary documents, to their benefit, and exactly as estate planning documents should operate. In short, there were no damages in 1992 precisely because Stanley's will was admitted to probate and the Trust was being implemented. Prior to 1995, no claim had been asserted jeopardizing the Trust, Stanley's will or the bequest to Steve of the trucking operation.

20

¶51 The Idaho Supreme Court has adopted an "objectively ascertainable damage" rule in legal malpractice actions requiring "objective proof that would support the existence of some actual damage." *Chicoine v. Bignall* ( Idaho 1992), 835 P.2d 1293, 1298. Like Montana, the Idaho court requires more than faulty legal documents taking final effect. Instead, the cases look for some damage caused by an activity adverse to the damaged party. *See, e.g., Elliott v. Parsons* (Idaho 1996), 918 P.2d 592 (damages occurred not when faulty legal documents drafted and implemented for sales transactions, but rather four years later when clients incurred legal fees to resolve resulting disputes with the I.R.S.); *Bonz v. Sudweeks* (Idaho 1991), 808 P.2d 876 (no damages when faulty legal work was done by filing a release of *lis pendens* in the wrong county; rather, damages occurred later when the mistake resulted in the loss of a potential financier). *See also Marshall v. Fenton, Fenton, Smith, Reneau & Moon* (Okla. 1995), 899 P.2d 621 (where client is involved in litigation through attorney's negligence, client suffers no damages until the litigation begins).

¶52 Based on the foregoing, we reiterate our holding in *Uhler* that the statute of limitations for legal malpractice actions does not begin to run until all elements of a claim, including damages, have occurred. *Uhler*, 268 Mont. at 195-200, 885 P.2d at 1300-03. In this case, Appellants did not sustain any damages until 1995.

¶53 Accordingly, we hold that the present action, filed on April 3, 1997, was well within the three-year statute of limitations for legal malpractice actions.

¶54 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

Justice Jim Rice specially concurring.

¶55 I concur with the holding of the Court on all issues, but do not agree with the entirety of the Court's analysis with regard to the doctrine of judicial estoppel.

¶56 The Court cites the doctrine's four-part test as set forth in *Kauffman-Harmon v. Kauffman*, 2001 MT 238, 307 Mont. 45, 36 P.3d 408, and notes that the record is devoid of evidence that Respondents were misled by the declarations made by Appellants in the Beneficiary Litigation, as required under part four of that test. *See* ¶ 34. The Court also concludes that the doctrine applies only to unequivocal statements of fact, not to legal theories or positions taken by a party. *See* ¶ 34. I believe these conclusions circumscribe the doctrine of judicial estoppel in ways we have been careful to avoid in the past, and I disagree with doing so.

¶57 Although we have previously employed the four-part test in cases such as *Kauffman* and *Fiedler v. Fiedler* (1994), 266 Mont. 133, 879 P.2d 675, we have not universally used the test in determining the doctrine's applicability. We applied the doctrine in *Rowland v. Klies* (1986), 223 Mont. 360, 726 P.2d 310, without using the test, and declined to apply the doctrine in *Nelson v. Nelson*, 2002 MT 151, 310 Mont. 329, 50 P.3d 139, without referencing the test. While the four-part test may be helpful in some cases, it is important to note that the "[j]udicial estoppel doctrine is equitable . . . ." *Nelson*, ¶ 20 (quoting 28 Am.Jur.2d *Estoppel and Waiver* § 74 (2000)). We have noted that "while this rule is frequently referred to as 'judicial estoppel,' it more properly is a rule which estops a party to play fast-and-loose with the courts . . . ." *Rowland*, 224 Mont. at 367, 726 P.2d at 315

23

(quoting 31 C.J.S. Estoppel § 117B, pgs. 623-627 (1964)). Consequently, as an equitable doctrine, "there is no pat formula for applying judicial estoppel, and a flexible standard for judicial estoppel permits consideration of all circumstances involved." 31 C.J.S. *Estoppel and Waiver* § 139, p. 595 (1996); *see also Czajkowski v. Chicago* (1992), 810 F.Supp. 1428, 1445 (the doctrine is applied under "a flexible standard not reducible to a pat formula"). In my view, there may be circumstances beyond those defined by the four-part test where application of the doctrine is appropriate.

¶58 Neither should the doctrine be limited to factual assertions. "Judicial estoppel may arise when a person has *taken a position or asserted a fact* under oath in a judicial proceeding contrary to a position he is taking in the present litigation . . . ." *Rowland*, 223 Mont. at 368, 726 P.2d at 316 (emphasis added) (quoting *LaChance v. McKown* (Tex.Ct.App. 1983), 649 S.W.2d 658, 660). We declined to apply the doctrine in *Nelson* because the litigant there was "not now changing her theory of liability, nor is she trying to prevail on opposite theories." *Nelson*, ¶ 21.

> [The doctrine] is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, *on opposite theories*. The purpose of the doctrine of judicial estoppel is to reduce fraud in the legal process by forcing a modicum of consistency on the repeating litigant.

*Nelson*, ¶ 20 (emphasis added) (quoting 28 Am.Jur.2d *Estoppel and Waiver* § 74 (2000)).

¶59 Appellants took the position in the Beneficiary Litigation that Mrs. Watkins was estopped from changing her previous judicial assertion that the 1992 Will and Trust were valid. They did not prevail in that litigation on the basis of their own judicial assertion that

24

the Will and Trust were valid, a subtle yet significant distinction. Furthermore, and in any event, the position Appellants took in the Beneficiary Litigation is not inconsistent with the position they have taken in the present litigation. Here they have alleged in their complaint:

> Defendants [have] breached their duties, implied obligations, and the heirs' justifiable expectations, and acted in bad faith, by, among other things, failing to determine clearly and document properly the intent of Stanley L. Watkins and allowing Stanley Watkins' will to be executed *in such a way as to allow Carolyn to challenge his will and the Trust, and failing to reasonably implement the terms of the Trust Agreement, including transferring assets into the Trust in a manner that left the ownership of the assets open to Carolyn Watkins' attack.*
>
> . . . . As a direct and proximate consequence of the Defendant's [sic] negligence . . . Ms. Watkins *was enabled to act in a manner that prejudiced the interests of the Plaintiffs* in favor of the personal interests of Ms. Watkins. [Emphasis added.]

Thus, Appellants' claims here are not necessarily premised on the invalidity of the Will or Trust, but only that the manner in which Respondents acted allowed Mrs. Watkins to prejudice their interests. I see no inconsistency here which calls for the application of the judicial estoppel doctrine.

¶60    I concur.

/S/ JIM RICE