DA 12-0121

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 215

JOHNSON FARMS, INCORPORATED,
and FLOYD JOHNSON,

　　　　　Plaintiffs and Appellants,

　　v.

ETHEL HALLAND,

　　　　　Defendant and Appellee.


APPEAL FROM:　District Court of the Fifteenth Judicial District,
　　　　　　　　In and For the County of Roosevelt, Cause No. DV 09-44
　　　　　　　　Honorable David Cybulski, Presiding Judge


COUNSEL OF RECORD:

　　　　　For Appellants:

　　　　　Loren J. O'Toole II, O'Toole & O'Toole, Plentywood, Montana

　　　　　For Appellee:

　　　　　John R. Christensen; Ben T. Sather; Christensen, Fulton & Filz, PLLC,
　　　　　Billings, Montana


　　　　　　　　　　　　Submitted on Briefs:　August 8, 2012
　　　　　　　　　　　　　　　　　Decided:　October 2, 2012


Filed:


　　　　　_____
　　　　　　　　　　　　　　Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Plaintiffs Johnson Farms, Inc. and Floyd Johnson (collectively "Johnson") appeal the judgment of the District Court for the Fifteenth Judicial District, Roosevelt County, granting Ethel Halland's (Ethel) motion for summary judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Dora Johnson (Dora) and her husband, G. Edward Johnson (Edward), operated a family farm together for many years near Froid, Montana. The family farm was operated as a corporation—Johnson Farms, Inc. Dora and Edward had five children: Phyllis Umolac (Phyllis), Kathy Warehime (Kathy), Ray Johnson (Ray), Floyd Johnson (Floyd) and Ethel. Following Edward's death in 1984, on March 30, 1989, Dora executed a trust agreement (Dora's Trust Agreement) wherein she designated herself as trustee and two of her children, Ethel and Floyd, as co-trustees. Dora's Trust Agreement provides that the trustee would deliver the net income of the trust to Dora until such time as she may become incapacitated. In the event that this were to occur, the trustee was responsible for distributing portions of the trust as deemed appropriate. In addition, Dora's Trust Agreement specifies that upon Dora's death all of her shares of stock in Johnson Farms, Inc. should be distributed equally to her two sons, Ray and Floyd, and certain sums of money to her three daughters, Ethel, Phyllis and Kathy.

¶3 Dora died on March 4, 2006. During the last years of her life Ethel was primarily responsible for her care and financial affairs. In addition to serving as co-trustee for Dora's Trust Agreement, Ethel was Dora's power of attorney beginning in 2003, and signed checks

on Dora's behalf from 2003 through 2005. During this time, the assets of Johnson Farms, Inc. were Dora's sole source of income.

¶4 Ethel also served as secretary of Johnson Farms, Inc. for a period of time that ended in the summer of 2005, following the execution of a family agreement (Johnson Family Agreement). Johnson Family Agreement was signed by all five of Dora's children and was the result of a family meeting with Alan Nikolaisen, a Plentywood certified public accountant, held on July 7, 2005. Among other provisions, Johnson Family Agreement provides that upon its execution by all five children, the operation and management of Johnson Farms, Inc. would be turned over entirely to Floyd and Ray. In exchange for Floyd and Ray receiving Johnson Farms, Inc. stock and land, Ethel and her two sisters would receive cash. After this meeting, Ethel ceased serving as an officer of Johnson Farms, Inc. and delivered a money order to Floyd for $500.00, which represented the remaining funds in the Johnson Farms, Inc. account.

¶5 On June 11, 2009, Johnson Farms, Inc. and Floyd filed a complaint against Ethel in two counts. The first count alleged that in her capacity as secretary of Johnson Farms, Inc., Ethel breached her fiduciary duties by diverting corporate funds to herself and others, and sought an accounting of funds from Ethel during the time she served as secretary. The second count alleged that "[i]n contravention of the written trust agreement," Ethel conferred gifts to herself and other family members. It also sought an accounting of "all monies that should have been included in the trust but were diverted by Ethel Halland."

¶6 Ethel answered Johnson's complaint, denying all claims of wrongdoing. On September 3, 2009, she submitted written discovery requests to Johnson, seeking the factual

3

background and documentation in support of the allegations contained in his complaint. After Ethel filed a motion to compel discovery approximately six months later, Johnson answered Ethel's discovery requests. His answer did not include much of the requested information, and he failed to produce supporting documents. Instead, he responded that "discovery [was] continuing" and "documents [ ] being subpoenaed." On November 16, 2010, Ethel sought supplementation of Johnson's discovery responses; Johnson did not respond.

¶7     Johnson also submitted discovery requests to Ethel, requesting she produce "all records in [her] possession pertaining to Johnson Farms, Incorporated." According to Johnson, on October 15, 2010, Ethel produced bank statements of Johnson Farms, Inc. from December 16, 2004 through September 21, 2005, as well as a check register from April 8, 2003 to September 1, 2005. Ethel maintained she also produced minutes from various corporate meetings, correspondence from previous family counsel regarding stock certificate transfers, an opinion letter from Mr. Nikolaisen regarding estate planning for Dora, and the Johnson Family Agreement.

¶8     On March 30, 2011, Ethel moved for summary judgment in the District Court, arguing that Johnson's complaint was barred by the statute of limitations and, further, that no genuine issues of material fact existed to preclude judgment in Ethel's favor. A hearing was set for September 14, 2011. Just prior to the hearing, Johnson filed two affidavits with the court. The first was an affidavit of Tami Maltese, a certified public accountant (CPA) who reconstructed the income and expense for Johnson Farms, Inc., as well as the shareholders' respective shares. According to her spreadsheets, the corporation earned $131,676.00 from

4

1996 through 2005, and Floyd's share of that net income was $47,101.38. Johnson also filed an affidavit of Floyd, in which he maintained that he never received a dividend or other payment from Johnson Farms, Inc. since 1997.

¶9 At the hearing, Johnson argued Ethel was equitably estopped from asserting a statute of limitations defense, a theory he had not yet raised in this case. The court gave the parties the opportunity for supplemental briefing on the point. In addition to arguing in his brief the doctrine of equitable estoppel, Johnson notably clarified that he was pleading a breach of contract claim, subject to an eight-year statute of limitations.

¶10 On November 14, 2011, the District Court granted Ethel's motion, finding that Ethel successfully established there were no material issues of fact and that the CPA only identified a profit dollar amount, but nothing further to establish any liability by Ethel. The District Court determined that equitable estoppel did not toll the statute of limitations; however, it did not discuss the statute of limitations defense any further. The District Court also awarded Ethel attorneys' fees and costs.

¶11 Johnson appeals the judgment entered in favor of Ethel, arguing that the District Court erred in granting Ethel's motion for summary judgment based on the statute of limitations and awarding Ethel attorneys' fees and costs. We note, however, that due to the brevity of the District Court's order it is somewhat unclear whether it actually relied on the statute of limitations in making its decision—and if so which period(s) it actually applied—or instead solely based its conclusion on its determination that Johnson failed to prove the existence of any genuine issue of material fact. Nevertheless, where the conclusion of the district court is correct, it is immaterial, for the purpose of affirmance on appeal, what reasons the district

court gives for its conclusion. *Erker v. Kester*, 1999 MT 231, ¶ 21, 296 Mont. 123, 988 P.2d 1221. If we reach the same conclusion as the district court, but on different grounds, we may affirm the district court's judgment. *In re Formation of East Bench Irrigation Dist.*, 2009 MT 135, ¶ 20, 350 Mont. 309, 207 P.3d 1097.

¶12 We acknowledge Ethel's contention on appeal that her motion for summary judgment may be properly granted on one of two theories: the running of the statute of limitations and the existence of no genuine issues of material fact. Because we hold that Johnson's claims are barred by the statute of limitations, it is not necessary we consider the question of whether the District Court correctly determined there were no genuine issues of material fact. We therefore reach the same decision as the District Court, addressing the following issues:

¶13 *Issue One: Are Johnson's claims barred by the statute of limitations?*

¶14 *Issue Two: Should Johnson be held responsible for payment of Ethel's attorneys' fees and costs?*

## STANDARDS OF REVIEW

¶15 We review the grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the District Court. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Albert*, ¶ 15. Once the moving party has met its burden, the non-moving party must present substantial evidence essential to one or more elements of the case to raise a genuine issue of material fact. *Styren Farms, Inc. v. Roos*, 2011 MT 299, ¶ 10, 363 Mont. 41, 265 P.3d 1230. Conclusory statements are insufficient to raise a genuine issue of

6

material fact. *Styren Farms Inc.*, ¶ 10. We further review a question of law to determine if the district court's legal conclusions are correct. *Palmer v. Bahm*, 2006 MT 29, ¶ 11, 331 Mont. 105, 128 P.3d 1031.

¶16 We review for correctness a district court's decision as to whether legal authority exists to award attorneys' fees. *Benintendi v. Hein*, 2011 MT 298, ¶ 16, 363 Mont. 32, 265 P.3d 1239. Additionally, we review for an abuse of discretion a district court's order granting or denying attorney fees if legal authority exists for the fees. *Benintendi*, ¶ 16.

## DISCUSSION

¶17 *Issue One: Are Johnson's claims barred by the statute of limitations?*

¶18 Johnson's complaint sets forth two counts against Ethel, both of which Johnson argues are founded upon a writing and hence subject to an eight-year statute of limitations period. He additionally contends that even if this Court applies a shorter period, the doctrine of equitable estoppel and the discovery rule serve as a bar to a statute of limitations defense. We address each of Johnson's arguments in turn.

## Statute of Limitations

¶19 When deciding which statute of limitations applies, this Court will look to the substance of the complaint. *Action Enters. by & Through Lindeman v. McCalla*, 259 Mont. 167, 169, 855 P.2d 111, 113 (1993) (citing *Weible v. Ronan State Bank*, 238 Mont. 235, 237, 776 P.2d 837, 838 (1989)). " 'If the gravamen of the action rests strictly on tort theories, the statute of limitations pertaining to torts will apply.' " *Action Enters.*, 259 Mont. at 169, 855 P.2d at 113 (quoting *Weible*, 238 Mont. at 237, 776 P.2d at 838). Likewise, if the gravamen

rests strictly on contract theories, the statute of limitations pertaining to contracts will apply. *Weible*, 238 Mont. at 237, 776 P.2d at 838. The contract statute of limitations applies only if the alleged breach of a specific provision in a contract provides the basis of the plaintiff's claims. *Tin Cup County Water v. Garden City Plumbing & Heating, Inc.*, 2008 MT 434, ¶ 26, 347 Mont. 468, 200 P.3d 60. On the other hand, if the plaintiff claims breach of a legal duty imposed by law that arises during the performance of a contract, the action sounds in tort and the tort statute of limitations will apply. *Tin Cup*, ¶ 26 (citing *Northern Montana Hosp. v. Knight*, 248 Mont. 310, 315, 811 P.2d 1276, 1278-79 (1991)).

¶20     In *Tin Cup* we highlighted the limitations on a plaintiff's ability to choose which theory to pursue in a given situation. ¶ 30. There, plaintiff Tin Cup brought suit against several defendants based on claims of poor supervision of a construction project. *Tin Cup*, ¶ 27. Although Tin Cup alleged its claims were subject to the eight-year contract statute of limitations—and pointed to two contracts which, if read together, created legal duties that the defendant allegedly breached—this Court held that the gravamen of the claim was negligence and was thus subject to the shorter tort statute of limitations. *Tin Cup*, ¶¶ 31, 36. We reiterated that a plaintiff simply may not choose which theory to pursue in any situation; there is a choice between a tort and contract cause of action "only where the substance of the complaint and the nature of the action give them the right to choose." *Tin Cup*, ¶ 30. Even though Tin Cup's complaint expressly referenced two written agreements, we concluded that since it could not "point to the violation of a specific contractual provision," the claim did not sound in contract. *Tin Cup,* ¶ 30 (citing *Northern Montana*, 248 Mont. at 315, 811 P.2d at 1278-79).

8

¶21 In the case before us, the rather unclear and undeveloped arguments in Johnson's complaint and their lack of factual support make it difficult to decipher exactly what claims were asserted. Count one alleged that in Ethel's capacity as secretary, she "breached her fiduciary duty to Johnson Farms, Incorporated by expending monies of Johnson Farms, Incorporated for her own personal expenses" and "diverted funds belonging to Johnson Farms, Incorporated to other sources." In the brief on appeal, Johnson argues that at issue is an action founded upon a writing because "obligations arise under Dora's trust on her death in 2006 and perhaps under the written agreement dated 2005." However, the complaint gives no mention of any written agreement, let alone an allegation of a violation of a specific contractual provision. Further, aside from a few vague statements made in Johnson's answer to Ethel's discovery requests, we are provided with no additional information to support or explain Johnson's claims. We are thus led to the conclusion that count one in Johnson's complaint is a claim of a breach of fiduciary duty or possibly conversion, but not contract. *See Action Enters.*, 259 Mont. 167, 855 P.2d 111 (holding that a plaintiff's claim to recover for alleged unauthorized taking of corporate funds for his own benefit involved an allegation of conversion, subject to a two-year statute of limitations).

¶22 All allegations in count one refer to events which occurred while Ethel was an officer of Johnson Farms, Inc., and both parties agree that Ethel ceased serving as an officer following the family meeting in the summer of 2005. Because Johnson has not asserted any facts in count one which occurred after this time, any alleged misappropriation of funds that would give rise to count one occurred prior to the summer of 2005. Consequently, whether

the complaint raised a breach of fiduciary duty claim or one of conversion, its filing on June 11, 2009, was untimely pursuant to § 27-2-204, MCA, and § 27-2-207(2), MCA.

¶23 With regard to count two of his complaint, Johnson argues he pled a "straight breach of contract claim." We disagree. Although Johnson's complaint references a written agreement, like *Tin Cup*, he failed to point to the violation of a specific contractual provision. In fact, it was not until more than two years after Johnson filed his complaint that he first explicitly clarified that he was pleading a breach of contract claim. Johnson's complaint only vaguely alleged wrongful conduct in "contravention of the written trust agreement." Nothing further was argued or presented to the District Court that identified the existence of a breach of contract claim until Johnson's supplementary brief filed on October 4, 2011. Additionally, it is unclear which written agreement he actually asserts his claims are founded on—Dora's March 30, 1989, Trust Agreement or the Johnson Family Agreement executed in the summer of 2005.

¶24 Similar to *Tin Cup*, where the gravamen of Tin Cup's arguments sounded in tort theory, we conclude that the nature of Johnson's claims in count two against Ethel rests upon a claim of either a breach of fiduciary duty or conversion. The single allegation made in the complaint is that Ethel "caused gifts to be made to herself and other family members." In a response to discovery, the only facts he presented in support of this allegation were that Ethel "used a power of attorney to take Dora's name off funds that were from the sale of the Canadian farm land and other accounts originally ear marked for all of Dora's children. These funds went to Ethel and her sisters only." These allegations Johnson raised regarding count two, if true, occurred during Dora's lifetime. Therefore, the statute of limitations

began to run, at the latest, upon Dora's death on March 4, 2006. Johnson's June 11, 2009, filing of his complaint was barred by both a two and three-year statute of limitations.

¶25 On appeal, Johnson points out that Montana adheres to the notice pleading requirements of a short and plain statement showing the pleader is entitled to relief, and argues his breach of contract claims were thus adequately pled. However, we have previously explained that a claim must "give notice to the other party of the facts which the pleader expects to prove, and the facts must disclose the presence of all the elements necessary to make out a claim." *Mysse v. Martens*, 279 Mont. 253, 266, 926 P.2d 765, 773 (1996). Because Johnson did not specify in his complaint that he was raising a breach of contract claim, nor did he set forth facts regarding specific actions or inactions by Ethel that would make known that he was pleading such a claim, he failed to adequately plead a breach of contract claim.

¶26 Johnson correctly recognizes we have previously held that when there is a question as to which of two or more statutes of limitations should apply, the general rule is that the doubt should be resolved in favor of the statute containing the longest limitations. *Thiel v. Taurus Drilling*, 218 Mont. 201, 212, 710 P.2d 33, 40 (1985). However, we have emphasized that this is when there is a "substantial question" as to which statute of limitations should apply. *See e.g. Royal Ins. Co. v. Roadarmel*, 2000 MT 259, ¶¶ 19, 21, 301 Mont. 508, 11 P.3d 105. Here, we do not find such a substantial question. Based on our analysis above, we determine that his claims sounded in tort theory rather than contract.

**Equitable Estoppel and the Discovery Rule**

¶27 Johnson additionally argues that even if a shorter statute of limitations applies, it would be barred by the doctrine of equitable estoppel and the discovery rule. The doctrine of equitable estoppel prevents one party from unconscionably taking advantage of a wrong while asserting a strict legal right. *Cascade Dev., Inc. v. City of Bozeman*, 2012 MT 79, ¶ 23, 364 Mont. 442, 276 P.3d 862. It is grounded in both statute and case law, and is applied to prevent an inequitable result. *Cascade Dev., Inc.,* ¶ 23. Estoppel will grant relief when, in view of all the circumstances, to deny it would permit one of the parties to suffer a gross wrong at the hands of the other party who brought about the condition. *In re Estate of Stukey*, 2004 MT 279, ¶ 37, 323 Mont. 241, 100 P.3d 114. Estoppel is an appropriate remedy if a party is denied the right to prove an otherwise important fact because of something which the party has done or omitted to do. *In re Estate of Stukey*, ¶ 37. It is not favored and will be sustained only upon clear and convincing evidence. *In re Estate of Stukey*, ¶ 37.

¶28 It is well established under Montana law that a party must prove six elements in order to succeed on an equitable estoppel claim: (1) the existence of conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) the party estopped must have knowledge of these facts at the time of the representation or concealment, or the circumstances must be such that knowledge is necessarily imputed to that party; (3) the truth concerning these facts must be unknown to the other party at the time it was acted upon; (4) the conduct must be done with the intention or expectation that it will be acted upon by the other party, or have occurred under circumstances showing it to be both natural and probable that it will be acted upon; (5) the conduct must be relied upon by the other party and lead that

party to act; and (6) the other party must in fact act upon the conduct in such a manner as to change its position for the worse. *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 67, 322 Mont. 133, 95 P.3d 671 (internal citations omitted). All six elements must be established before the doctrine can be invoked. *Pankratz Farms, Inc.*, ¶ 67.

¶29 Johnson argues that it was not until Ethel turned over Johnson Farms' bank statements and check register on October 15, 2010, that he became aware of Ethel's alleged misappropriation of funds. Such action, Johnson contends, amounts to a "fraudulent concealment" invoking the doctrine of equitable estoppel. We find Johnson's argument unconvincing for two reasons. First, we cannot find any fact in the record that supports Johnson's assertion that Ethel concealed any financial information. While Johnson repeatedly claims that Ethel remained in possession of the farm's financial information, "concealing her actions," his assertions amount to no more than mere speculation. Neither Johnson's response to Ethel's discovery requests or his own discovery requests produced any evidence supporting these claims. The only support Johnson submitted to the District Court was the two affidavits of the CPA and Floyd. The CPA's affidavit supplies us with a profit dollar amount for the corporation, and Floyd's claimed portion of such net income, while Floyd's affidavit essentially just repeats the allegations of his complaint. Neither provides anything that would lead us to question Ethel's actions.

¶30 Second, Johnson's argument fails to recognize that equitable estoppel requires a complaining party to lack actual knowledge of the true facts of the case as well as a readily available means of discovering them. *Cascade Dev., Inc.*, ¶ 26. Further, we will not apply the doctrine of equitable estoppel where both parties have the same opportunity to determine

13

the truth of the facts at issue. *Elk Park Ranch v. Park County*, 282 Mont. 154, 166, 935 P.2d 1131, 1138 (1997). Here, at the time Ethel delivered the $500 check to Floyd in the summer of 2005, she was no longer an officer of Johnson Farms, Inc., and Floyd and Ray were in complete control of its operation and management. As part-owner of 100% of the corporation, Floyd either knew or should have known of the financial status of the corporation, and had the same, if not better, opportunity as Ethel to access any information that he believed supported a case.

¶31    Johnson argues that whether Ethel concealed the financial records or whether her wrongdoings should have been discovered earlier are issues of fact that "are exactly the type of factual questions appropriate for resolution by the trier of fact." Johnson cites *Young v. Datsopoulos*, 249 Mont. 466, 817 P.2d 225 (1991), to support this proposition, and further relies on *Stanley L. & Carolyn M. Watkins Trust v. Lacosta*, 2004 MT 144, 321 Mont. 432, 92 P.3d 620, and *Mills v. Mills*, 305 P.2d 61 (Cal. Dist. Ct. App. 1956). All three cases are distinguishable from the case at hand and none support Johnson's position.

¶32    Johnson's reliance on *Young* is misplaced. In *Young*, the plaintiff sued the defendant for legal malpractice, and the District Court granted the defendant partial summary judgment on the basis that the claim was barred by the statute of limitations. 249 Mont. at 470, 817 P.2d at 227. This Court reversed the District Court's decision, stating that whether or not malpractice occurred may be inherently unknowable to the lay client, thereby affecting the date of accrual of the claim. *Young*, 249 Mont. at 473, 817 P.2d at 229. We recognized that in a complex legal malpractice suit, a client may not be cognizant of the facts which form the basis of the suit because the matter is not within the range of knowledge of the average lay

person. *Young*, 249 Mont. at 472, 817 P.2d at 229. Thus, when it was or should have been knowable to the plaintiff was "the type of factual question appropriate for resolution by a trier of fact." *Young*, 249 Mont. at 473, 817 P.2d at 229. Here, in contrast, there is nothing that leads us to reason that the nature of Johnson's claim was such that Johnson would not understand or recognize what facts may or may not support his allegations. Instead, he argues that he did not have knowledge of them because Ethel concealed them, not because they were not within his range of knowledge or because his claims were "inherently unknowable" to a lay person, as they were in *Young*.

¶33    Johnson's reliance on *Watkins Trust* is similarly unpersuasive. There, we held that a statute of limitations did not begin to run until a plaintiff discovered, or with reasonable diligence should have discovered, the act, error, or omission that led to the rise of their claim. *Watkins Trust*, ¶ 44. We further recognized that whether a plaintiff should have discovered the act, error, or omission is dependent on any fraudulent concealment by the defendant. *Watkins Trust*, ¶ 44. In *Watkins Trust*, the plaintiffs sued an attorney for legal malpractice and claimed that the statute of limitations for their action should be tolled because the attorney fraudulently concealed information regarding their claim. *Watkins Trust*, ¶ 37. Unlike the case at hand, in *Watkins Trust* we found actual evidence in the district court record that supported the plaintiffs' allegation that the attorney concealed information from them, including statements and actions made by the attorney. *Watkins Trust*, ¶¶ 10-11, 47. Here, if the record contained any evidence that raised a genuine issue of material fact regarding any concealment by Ethel, it would be appropriate for resolution by the trier of

15

fact. However, the record is bare of any firm allegations of concealment supported by evidence.

¶34 Johnson further urges this Court to follow *Mills v. Mills*, a case in which a California appellate court invoked the doctrine of equitable estoppel to bar a statute of limitations defense. In *Mills*, the defendant, Oscar Mills (Mills), purchased a piece of property from his parents, signing a promissory note for partial consideration. *Mills*, 305 P.2d at 64. Mills never paid any portion of the note and, following his parents' death, he allegedly concealed his indebtedness for the property from his other family members, with whom he had relationships of trust and confidence. *Mills*, 305 P.2d at 64-65. Because of Mills' concealment, his family members refrained from investigating their rights, titles, and interest in the property, and Mills argued their claim against him regarding their rights in the realty was barred by the statute of limitations. *Mills*, 305 P.2d at 66, 69. Determining that Mills "fraudulently and deceitfully concealed" information relevant to the plaintiffs' claims, the court invoked the doctrine of equitable estoppel to prevent Mills from relying on the statute of limitations to bar plaintiffs' claims. *Mills*, 305 P.2d at 65, 72.

¶35 Johnson argues the present case is factually similar to *Mills*, and we should thus follow the California appellate court's holding. We disagree. Unlike the case before us, the *Mills'* court was presented with a host of actual statements and specific representations made by Mills to his family members that tended to prove a possible fraudulent concealment of his indebtedness for the unpaid purchase price of the realty. *Mills*, 305 P.2d at 65. It was because of such evidence that the court held the cause of action was not barred by the statue of limitations. *Mills*, 305 P.2d at 72. As previously explained, Johnson did not present

16

sufficient evidence to establish the existence of a material issue of fact regarding Ethel's concealment of financial information.

¶36 For these reasons, we conclude that the District Court did not err in determining that equitable estoppel does not toll the statute of limitations for Johnson's claims.

¶37 In addition to equitable estoppel, Johnson argues on appeal that Ethel's statute of limitation defense is tolled by the discovery rule. Under the discovery rule, the statute of limitations begins when the plaintiff discovers or through the use of reasonable diligence should have discovered the negligent act. Section 27-2-102(3), MCA. Whether a plaintiff discovers or should have discovered the act depends on whether the defect is concealed. Section 27-2-102(3), MCA. Because we just determined Johnson failed to show any concealment on Ethel's behalf, we reject this argument for the same reasons as we reject the equitable estoppel claim.

¶38 *Issue Two: Should Johnson be held responsible for payment of Ethel's attorneys' fees and costs?*

¶39 Johnson argues that the District Court erred in awarding Ethel attorneys' fees and costs for her defense of count one under Montana's corporate indemnity statutes, and of count two under the provisions of Dora's Trust Agreement. Specifically, he asserts on appeal that Ethel should not be indemnified against liability because she did not engage in good faith conduct and her actions were not in the best interests of Johnson Farms, Inc. Yet, Johnson never raised these arguments before the District Court, nor did he object to Ethel's claimed attorneys' fees and costs that were granted at a January 11, 2012, hearing. This Court will not put a district court in error for failing to address an issue or argument that was

17

not made before it. *Nielsen v. Hornsteiner*, 2012 MT 102, ¶ 17, 365 Mont. 64, 277 P.3d 1241 (citing *Prescott v. Innovative Res. Group, LLC*, 2010 MT 35, ¶ 14, 355 Mont. 220, 225 P.3d 1253). Because Johnson never properly presented the District Court with an objection to the award of attorneys' fees, let alone an argument in support of such an objection, we affirm the District Court's decision to award Ethel attorneys' fees and costs.

¶40 Ethel claims that she is entitled to the costs of her appeal pursuant to Rule 19(3)(a) of the Montana Rules of Appellate Procedure. M. R. App. P. 19(3)(a) allows costs on appeal to be awarded to the prevailing party unless otherwise specifically provided in the decision by this Court. "Taxable costs include costs of reproducing briefs and necessary appendices, costs incurred in transmission of the record, cost of the reporter's transcript if necessary for the determination of the appeal, and the fee for filing the notice of appeal." M. R. App. P. 19(3)(a). As the prevailing party, Ethel is entitled to the costs of this appeal. This is a factual matter that must be resolved by the District Court on remand.

## CONCLUSION

¶41 For the reasons stated above, we affirm the District Court's Order granting Ethel's motion for summary judgment and attorneys' fees and costs. We remand for further proceedings in accordance with this Opinion.

¶42 Affirmed and Remanded.


/S/ MICHAEL E WHEAT


We Concur:

18

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE