# FILED

June 5 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0493

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 152

TERRY L. BELL GENERATIONS TRUST,

Plaintiff and Appellant,

v.

FLATHEAD BANK OF BIGFORK,

Defendant and Appellee.

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV-10-436
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Sean S. Frampton, Brian M. Joos, Morrison & Frampton PLLP,
Whitefish, Montana

For Appellee:

Paul A. Sandry, Johnson, Berg, & Saxby, PLLP, Kalispell, Montana

Submitted on Briefs:  March 20, 2013

Decided:  June 5, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Terry L. Bell Generations Trust (Bell) appeals from an order of the Twentieth Judicial District Court, Lake County, entering summary judgment in favor of Flathead Bank of Bigfork (Flathead Bank) on Bell's easement claims. The District Court determined that Bell's easement rights were subordinate to Flathead Bank's interests in the subject real property and were properly foreclosed upon and extinguished by Flathead Bank through a trustee's sale. We affirm.

## ISSUE

¶2 We restate the issue raised by Bell on appeal as follows:

¶3 Did the District Court err in granting summary judgment to Flathead Bank on Bell's easement claims?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On or around September 23, 2008, Bell purchased two lots (Lots) in the Pine Meadows RV Retreat Condominiums from Mallory and Maggie Sunderland (Sunderlands). The Lots were located near Flathead Lake. The purchase agreement for the Lots granted Bell an easement for access to Flathead Lake over and across a lakefront parcel of land (Lake Property) also owned by Sunderlands. Sunderlands planned to use the Lake Property for a clubhouse and recreational access to Flathead Lake for the benefit of purchasers of lots in the RV park. On October 6, 2008, Bell's easements across the Lake Property were recorded with the Lake County Clerk and Recorder's Office.

¶5 At the time of the purchase, the Lots and Lake Property were encumbered by deeds of trust issued by Flathead Bank. Sunderlands provided Flathead Bank with a copy

2

of the buy-sell agreements. Flathead Bank was aware that Sunderlands intended to package the RV lots with easements appurtenant to the Lake Property. At closing, Flathead Bank released its deeds of trust relating to the Lots.

¶6 After Sunderlands became delinquent on their loan obligations, Flathead Bank attempted to foreclose on the Lake Property by way of a trustee's sale on March 5, 2010. Flathead Bank purchased the Lake Property at the trustee's sale and received a trustee's deed that was recorded in March 2010. Flathead Bank failed to provide Bell with notice of the trustee's sale. In a letter to Bell dated June 8, 2010, Flathead Bank stated that: "It is not the intention of the Bank to impinge on your right to use the easement." On August 11, 2010, Flathead Bank noticed a second trustee's sale of the Lake Property. This time, Bell was provided with notice of the intended sale.

¶7 Bell filed a complaint on December 13, 2010. Bell asserted claims of equitable estoppel, negligence, and breach of contract, and requested a declaratory judgment setting forth Bell's easement rights in the Lake Property as valid and inextinguishable by Flathead Bank. Bell claimed that it would be a violation of the "one-action rule"[1] for Flathead Bank to hold a second trustee's sale of the Lake Property because Flathead Bank already purchased the property at the first trustee's sale in March. Citing the doctrine of merger, Bell further argued that once Flathead Bank foreclosed, purchased the Lake Property, and a deed was issued in its name, Flathead Bank no longer had a deed of trust

---

[1] The "one-action rule" limits a secured creditor to bringing a single judicial proceeding against a borrower in foreclosure. Montana's "one-action rule" is set forth in § 71-1-222, MCA, and states that: "There is only one action for the recovery of debt or the enforcement of any right secured by a mortgage upon real estate."

3

upon which it could foreclose. Essentially, Bell claimed the Bank was precluded from holding the second sale and that it therefore could not extinguish its easement via the second sale.

¶8 The second trustee's sale was held on December 17, 2010. Flathead Bank recorded a second trustee's deed shortly thereafter. Flathead Bank filed its answer and counterclaim on January 3, 2011. Flathead Bank argued that Bell's easement rights to the Lake Property were subordinate to Flathead Bank's trust deed interests. In its counterclaim, Flathead Bank set forth a quiet title action and asserted that Bell's easements terminated and no longer encumbered the Lake Property. Flathead Bank requested that the District Court declare that it held title to the Lake Property in fee simple, free of any prior encumbrances.

¶9 Bell and Flathead Bank filed cross-motions for summary judgment. On July 2, 2012, the District Court entered its findings of fact, conclusions of law, and order granting summary judgment to Flathead Bank. The District Court determined that the first trustee's sale in March 2010 was invalid due to Flathead Bank's failure to provide adequate notice to Bell, but the second trustee's sale in December 2010 complied with all statutory requirements. The District Court concluded that Bell's easement claims were subordinate to Flathead Bank's interests in the Lake Property. On July 25, 2012, the District Court entered final judgment against Bell, stating that Bell had no right, estate, title, lien, easement, or interest in the Lake Property. Bell appeals.

**STANDARDS OF REVIEW**

4

¶10    We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Steichen v. Talcott Props., LLC*, 2013 MT 2, ¶ 7, 368 Mont. 169, 292 P.3d 458; *Brown & Brown of MT, Inc. v. Raty*, 2012 MT 264, ¶ 17, 367 Mont. 67, 289 P.3d 156. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

## DISCUSSION

¶11    *Did the District Court err in granting summary judgment to Flathead Bank on Bell's easement claims?*

### A. The first trustee's sale was null and void as to Bell for failure to comply with the notice requirements of § 71-1-315, MCA

¶12    Trust deeds are considered mortgages and are subject to all laws relating to mortgages on real property. Section 71-1-321, MCA. "Every such instrument [deeds of trust, trust deeds, or trust indentures], recorded as prescribed by law, from the time it is filed for record is constructive notice of its contents to subsequent purchasers and encumbrancers." Section 71-1-321, MCA. The parties do not dispute that Flathead Bank's trust deeds on the Lake Property were recorded prior to Bell's easement. Bell was aware of the existence of Flathead Bank's senior trust deeds when it purchased the Lots and the easement on the Lake Property. As a junior easement holder, Bell's easement was subject to extinguishment through foreclosure of a senior mortgage. Under Montana law, Bell's easement on the Lake Property was subordinate to Flathead Bank's earlier recorded trust deeds. *See* § 70-21-302, MCA. Bell does not dispute that his

5

easement would be extinguished by a properly noticed foreclosure by Flathead Bank as trustee.

¶13 Section 71-1-315, MCA, establishes the procedure for foreclosing on a trust deed by advertisement and sale. The trustee is required to provide notice of the trustee's sale at least 120 days prior to the sale to "any person who has a lien or interest subsequent to the interest of the trustee and whose lien or interest and address appear of record at the filing date and time of the notice of sale." Section 71-1-315(1)(a)(v), MCA. When a trustee chooses to avoid judicial proceedings and foreclose on property pursuant to § 71-1-315, MCA, "the trustee is subjected to strict notice requirements before crying the sale." *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 13, 340 Mont. 62, 172 P.3d 116.

¶14 It is undisputed that the first trustee's sale on March 5, 2010, did not comply with these notice requirements. Bell was not provided any notice as an interest holder in the Lake Property as is required by § 71-1-315(1)(a)(v), MCA. Section 71-1-315(1)(a)(v), MCA, is silent concerning the consequences of the trustee's failure to adhere to the notice requirements. The District Court determined that the first trustee's sale was invalid as a matter of law because the trustee failed to comply with the notice requirements. Bell maintains that the first trustee's sale effectively foreclosed the Lake Property despite the lack of notice, and that because Bell was not notified of the sale, the purchaser of the Lake Property took ownership subject to Bell's easement.

¶15 This Court has not yet addressed the consequences of failing to comply with the notice requirements of § 71-1-315(1)(a)(v), MCA. However, we have previously held

6

that an attempted sale of property which has not been properly noticed is void. *See Hill v. Zuckerman*, 138 Mont. 230, 355 P.2d 521 (1960). In *Hill*, a lessee was granted a right of first refusal to purchase the leased premises by matching any purchase offer made by a third party. *Hill*, 138 Mont. at 232-33, 355 P.2d at 522-23. When the lessor received an offer to purchase the property from a third party, but failed to strictly comply with the notice requirements set forth in the lease, this Court held that the attempted sale to the third party was null and void. *Hill*, 138 Mont. at 236, 355 P.2d at 525.

¶16 Other jurisdictions have addressed factually similar situations in which an easement holder was not provided notice of a foreclosure proceeding. In *Diamond Benefits Life Ins. Co. v. Troll*, 66 Cal. App. 4th 1, 77 Cal. Rptr. 2d 581 (Cal. App. 1998), a beneficiary of trust deeds on a golf course property brought a judicial foreclosure action against the owners of the golf course. *Diamond*, 66 Cal. App. 4th at 4, 77 Cal. Rptr. 2d at 583. The trust deeds were recorded prior to the recording of an easement owned by a neighboring landowner. *Diamond*, 66 Cal. App. 4th at 4, 77 Cal. Rptr. 2d at 583. When the beneficiary of the trust deeds filed the foreclosure action, it failed to make the easement owner a party to the proceeding or otherwise provide notice to the easement owner. *Diamond*, 66 Cal. App. 4th at 4, 77 Cal. Rptr. 2d at 583. After the foreclosure took place, the easement owner filed an action to quiet title to the easement, and the purchaser in the foreclosure action also filed a quiet title action. *Diamond*, 66 Cal. App. 4th at 4, 77 Cal. Rptr. 2d at 583. The court determined that since the easement owner was not named in the initial judicial foreclosure, the foreclosure had no effect upon his rights in the foreclosed property. *Diamond*, 66 Cal. App. 4th at 5, 77 Cal. Rptr. 2d at

7

584. However, the court concluded that the trust beneficiary and purchaser retained the right to foreclose against the easement owner's interest. *Diamond*, 66 Cal. App. 4th at 5, 77 Cal. Rptr. 2d at 584.

¶17 In reaching its decision in *Diamond*, the court relied on the Oregon Supreme Court decision *Monese v. Struve*, 62 P.2d 822 (Or. 1936). *Monese* involved a foreclosure of a servient tenement property where the foreclosing party failed to serve the owner of the dominant tenement. The Court determined that the first foreclosure was invalid and ineffectual against the interest of the owner of the dominant tenement. *Monese*, 62 P.2d at 825. The Court reasoned as follows:

> The mortgagee has the right to a second foreclosure as to the parties omitted in the first foreclosure. A resale of the premises affords defendants every right which they would have had if they had been properly joined as parties in the first foreclosure and subjects them to no additional inconvenience or hardships. The theory of the law is that as to them the mortgage is unforeclosed.

*Monese*, 62 P.2d at 825.

¶18 We agree with the reasoning set forth in *Diamond* and *Monese*. When the trustee failed to provide proper notice as required by § 71-1-315, MCA, the first trustee's sale of March 5, 2010, was null and void as to Bell. In a foreclosure by advertisement and sale, the trustee must strictly adhere to the notice provisions of § 71-1-315, MCA, to protect the rights of interested parties. When the notice requirements are not followed, the only recourse is a second trustee's sale where each interest holder who did not previously receive notice receives appropriate notice and has an opportunity to purchase the subject

8

property. As to Bell, the District Court correctly concluded that the first trustee's sale was invalid and ineffectual, and that the second foreclosure action was appropriate.

¶19 Next, Bell alleges that Flathead Bank acted intentionally in not providing notice to Bell of the first trustee's sale because Flathead Bank did not intend to impinge on Bell's right to use the easement on the Lake Property. Bell argues that in light of Flathead Bank's intentional decision not to provide notice, the first trustee's sale was valid and the foreclosure takes effect subject to the easement. In support of its argument, Bell points to the June 8, 2010 letter from Flathead Bank to Bell that stated: "It is not the intention of the Bank to impinge on your right to use the easement."

¶20 Bell misapprehends the effect of Flathead Bank's June 8, 2010 letter. The letter was written two months after the first foreclosure in response to a phone call from Bell notifying Flathead Bank that it intended to rent the Lots to a third party and allow the renter to exercise its easement to the Lake Property. The statement Bell relies on must be put into context. The full paragraph in the letter reads as follows:

> If you intend to utilize the commercial building there is the issue of proration of utilities, taxes for your portion of the property, and insurance for the building. It is not the intention of the Bank to impinge on your right to use the easement. However, use of the easement could result in both you and the Bank being exposed to potential liability claims and therefore we need to ensure that all parties are protected.

Flathead Bank's statement concerning its intent to refrain from impinging upon Bell's easement rights was specifically in reference to additional restrictions and concerns that arise when the easement is used by a renter. Flathead Bank's statement acknowledged that the easement had not yet been discharged. Contrary to Bell's assertion, there is

9

nothing in the letter to suggest that Flathead Bank instructed the trustee not to provide notice to Bell or intended in any way to exclude Bell from the first trustee's sale. Furthermore, the letter cannot logically be read to constitute a subsequent promise by Flathead Bank not to exercise its right to foreclose on Bell's easement at some point in the future.

**B. The second trustee's sale effectively foreclosed on the Lake Property and extinguished Bell's easement**

¶21 We now turn to the second trustee's sale that took place on December 17, 2010. Bell challenges the validity of the second trustee's sale by invoking the doctrine of merger. Bell asserts that once Flathead Bank received and recorded a trustee's deed, all documents merged into that deed and Flathead Bank no longer had a trust deed upon which it could foreclose. As such, Bell argues that the second trustee's sale was invalid.

¶22 It is undisputed that Bell was properly notified before the second trustee's sale took place. Bell had a full opportunity to appear and bid at the second trustee's sale but did not do so. Based on our earlier decision that the first trustee's sale was null and void as to Bell, and that pursuant to *Diamond* and *Monese* Flathead Bank retained the right to foreclose through a second trustee's sale, it is clear that the first foreclosure proceeding did not result in a merger of title and extinguishment of Flathead Bank's trust deeds. Moreover, § 71-1-222(4)(e), MCA, specifically excludes a foreclosure by advertisement and sale from the limitations imposed by the "one-action rule."

**C. Equitable estoppel does not apply**

¶23 Finally, Bell argues that Flathead Bank should be equitably estopped because its conduct amounted to a representation that it did not intend to foreclose Bell's easement and it confirmed this intention with its June 8, 2010 letter. Bell asserts that it never would have purchased the Lots had they not been packaged with easements to the Lake Property.

¶24 To succeed on an equitable estoppel claim, a party must establish the following six elements: (1) the existence of conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) the party estopped must have knowledge of these facts at the time of the representation or concealment, or the circumstances must be such that knowledge is necessarily imputed to that party; (3) the truth concerning these facts must be unknown to the other party at the time it was acted upon; (4) the conduct must be done with the intention or expectation that it will be acted upon by the other party, or have occurred under circumstances showing it to be both natural and probable that it will be acted upon; (5) the conduct must be relied upon by the other party and lead that party to act; and (6) the other party must in fact act upon the conduct in such a manner as to change its position for the worse. *Johnson Farms, Inc. v. Halland*, 2012 MT 215, ¶ 28, 366 Mont. 299, 291 P.3d 1096; *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 67, 322 Mont. 133, 95 P.3d 671.

¶25 Bell fails to establish the elements necessary to support the imposition of equitable estoppel. When Bell purchased the Lots and the easement, Flathead Bank's prior trust deeds were of record and were known to Bell. Flathead Bank did not conceal this fact from Bell and never made any representations to the contrary. Flathead Bank's June 8,

11

2010 letter did not constitute a concealment or misrepresentation of a material fact. As previously discussed, the June 8, 2010 letter did not indicate that Flathead Bank consented to the ongoing existence of Bell's easement, nor did the letter demonstrate that Flathead Bank did not intend to foreclose on Bell's easement in the future. Absent a misrepresentation or concealment of a material fact, Bell cannot establish the first requisite element of equitable estoppel. *See Let the People Vote v. Bd. Of County Comm'rs*, 2005 MT 225, ¶ 23, 328 Mont. 361, 120 P.3d 385 ("Hence, by its terms, equitable estoppel, 'requires the misrepresentation of a material fact.' "). Even if we were to accept Bell's position that the letter constituted a misrepresentation, there is no evidence in the record that Bell relied on these representations or changed its position for the worse. Based on our conclusion that Bell failed to establish the first element of equitable estoppel, it is unnecessary to fully address the remaining five elements.

¶26 We conclude that equitable estoppel is not applicable under the facts of this case.

## CONCLUSION

¶27 For the foregoing reasons, we affirm the District Court's grant of summary judgment to Flathead Bank. Flathead Bank effectively foreclosed on Bell's easement through the second trustee's sale. The District Court properly entered judgment in favor of Flathead Bank and correctly concluded that Bell has no right, estate, title, lien, easement, or interest in the Lake Property.

/S/ PATRICIA COTTER

12

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice Michael E Wheat dissents.

¶28    I dissent from the Court's decision to affirm the grant of summary judgment to Flathead Bank because I believe there is a remaining genuine issue of material fact which precludes summary judgment and must be resolved through the trial process.

¶29    Of particular relevance here are the following facts:  Flathead Bank knew of Bell's easement rights when it held its first trustee's sale.  Flathead Bank did not notify Bell of the sale.  After the sale, Flathead Bank explicitly stated to Bell:  "It is not the intention of the Bank to impinge on your right to use the easement."  Then, a few months later, Flathead Bank decided, contrary to its earlier decision, to move forward with termination of Bell's easements.

¶30    Bell argues that Flathead Bank intentionally did not notify Bell of the first trustee's sale because Flathead Bank did not intend to impinge on Bell's right to use the easements on the Lake Property.  Flathead Bank disputes this allegation, and maintains that the failure to provide Bell with notice was unintentional, "and frankly a mistake."  This factual dispute is significant.

¶31    As the Court correctly points out, § 71-1-315(1)(a)(v), MCA, is silent concerning the consequences of a trustee's failure to adhere to the notice requirements.  In a situation where a trustee intentionally does not notify an interested party of a foreclosure sale, and, after the sale, confirms its intent not to extinguish that party's interests, the trustee's failure to provide notice should not entitle it to a complete "do-over" if it later changes its mind and decides that it does

13

want to terminate the party's interests. Here, if Flathead Bank intentionally did not notify Bell of the first trustee's sale because it did not intend to extinguish Bell's right to use the easements—as it explicitly told Bell—Flathead Bank should not get a second bite at the apple because it ultimately determined that it did in fact want to terminate Bell's interests. In such a situation, Flathead Bank's failure to strictly comply with the notice requirement of § 71-1-315(1)(a)(v), MCA, should not render the initial foreclosure sale void.

¶32 Flathead Bank's intention with respect to the first trustee's sale is a question that should not have been resolved by summary judgment. I would reverse the District Court and hold there was a genuine issue of material fact which precluded summary judgment and remand for a trial on that issue. I respectfully dissent from the Court's failure to do so.


/S/ MICHAEL E WHEAT

14